**United States District Court**
For the Northern District of California

1
2
3
4
5                    UNITED STATES DISTRICT COURT
6                    NORTHERN DISTRICT OF CALIFORNIA
7
8    CITY OF OAKLAND,                          No. C-07-2142 EMC
9              Plaintiff,
10        v.                                   **ORDER GRANTING IN PART AND**
                                               **DENYING IN PART CITY OF**
11   WILLIAM ABEND, *et al.*,                  **OAKLAND'S MOTIONS TO DISMISS**
12             Defendants.                     **(Docket Nos. 4, 7)**
13   _____/
14
15        This action consists of two cases that were originally filed in state court.
16        The first case, filed on September 19, 2006, was initiated by the City of Oakland against
17   William Abend.  In its amended complaint, the City alleged that Mr. Abend was the owner of certain
18   real property and that he was using or permitting the use of the property for both the unlawful sale,
19   storage, or manufacture of controlled substances and for lewdness and prostitution.  The City
20   asserted claims for drug abatement, red light abatement, and public nuisance.  In response, Mr.
21   Abend filed a cross-complaint against the City.
22        The second case, filed on October 31, 2006, was initiated by Mr. Abend and his wife Marcia
23   against the City, the Office of the City Administrator, Deborah Edgerly (the City Administrator),
24   Barbara Killey (an employee in the Office of the City Administrator), and Arturo Sanchez (an
25   employee in the Office of the City Administrator) (collectively "City Defendants").
26        On April 6, 2007, the state court consolidated the two cases upon motion by the Abends and
27   designated the first case the lead case.  Shortly thereafter, on April 17, 2007, the City removed the
28

1  consolidated cases to this Court.  The City is now moving to dismiss Mr. Abend's cross-complaint

2  and the City Defendants are moving to dismiss the Abends' separate petition/complaint.

3      Having reviewed the parties' briefs and accompanying submissions, and all other evidence of

4  record, the Court hereby **GRANTS** in part and **DENIES** in part the two motions to dismiss.

5              **I.    FACTUAL & PROCEDURAL BACKGROUND**

6  A.    Abends' Petition for Writ of Administrative Mandamus and Complaint

7      In their petition/complaint, the Abends allege as follows.

8      The Abends are individuals residing in the City and County of San Francisco and are owners

9  of certain real property in Oakland.  *See* Pet. ¶ 3.  From May 1994 to May 2006, the City did not

10  provide any notice to the Abends that the property was a nuisance or that nuisance activities were

11  occurring on the property.  *See id.* ¶ 11.

12      On May 4, 2006, the City demanded a meeting with Mr. Abend.  *See id.* ¶ 12.  The purpose

13  of the meeting -- scheduled for May 23, 2006 -- was for Mr. Abend to sign an agreement with the

14  City regarding the property.  *See id.*

15      On May 17, 2006, approximately a week before the meeting, the City wrote a letter to the

16  Abends complaining of alleged drug- and prostitution-related arrests at or directly in front of the

17  property.  *See id.* ¶ 13.

18      The very next day, on May 18, 2006, the City issued a "30 Day Notice to Abate Letter" to

19  the Abends.  *See id.* ¶ 14 & Ex. A (letter, dated 5/18/06).  The letter was authored by Mr. Sanchez,

20  an employee in the Office of the Administrator.  *See id.*, Ex. A.  According to the letter, the City

21  Attorney's Office and the Oakland Police Department had provided the Office of the City

22  Administrator with evidence of nuisance activity at the property and were requesting that the

23  property be declared a public nuisance.  *See id.*  The City concluded that the nuisance activity

24  documented in the police reports "constitutes a public nuisance . . . in violation of Oakland

25  Municipal Code section 1.08 et seq."  *Id.*  The Abends were therefore assessed a $3,000 nuisance

26  case fee.  The Abends were also advised that, "thirty (30) days from the date of this letter, the City

27  may impose penalties of $1,000.00 a day up to $365,000 a year (pursuant to OMC Chapter 1,

28  Section), unless the nuisance conditions are abated. . . . Failure to do so may result in the City doing

so and billing you for the costs." *Id.*  The City further noted: "Fees, costs, payments, assessment, and penalties associated with [the City's] enforcement actions . . . shall be a charge against the property and the owners and, if not reimbursed immediately, shall become a special assessment/priority lien recorded against the property title and are recoverable through the property tax general levy and court action . . . ." *Id.*

The Abends had the right to appeal the determination of the City.  As explained by the May 18, 2006, letter: "You have the right to appeal this determination to an independent administrative hearing examiner.  In order to request an appeal you must . . . submit in writing the details upon which you base your claim that the City has erred or abused its discretion in these actions." *Id.*  The form for filing an appeal was enclosed.  *See id.*  According to the letter, the Abends had until June 1, 2006, to appeal -- *i.e.*, two weeks -- or they would "waive [their] right for further administrative adjudication of the matter." *Id.*  The form for filing an appeal provided similar information, stating, *inter alia*, that, "IF THE APPEAL AND FEE ARE NOT RECEIVED BY OUR OFFICE WITHIN 14 CALENDAR DAYS OF THE MAILING DATE OF THE NOTIFICATION OF THE ENFORCEMENT ACTION, OR IF THE APPELLANT FAILS TO IDENTIFY FACTS WHICH SUPPORT A CONTENTION THAT THE CITY HAS ERRED OR ABUSED ITS DISCRETION, THE APPEAL WILL BE DENIED WITHOUT AN ADMINISTRATIVE HEARING." *Id.*  The form instructed the appellant to "BRIEFLY IDENTIFY HOW THE CITY HAS ERRED OR ABUSED ITS DISCRETION IN BRINGING THIS ACTION." *Id.*

On May 23, 2006, the Abends, along with their attorney and property managers, met with City representatives.  *See id.* ¶ 16.  At the meeting, the Abends were told that "they were required to sign a Compliance Agreement . . . regarding the PROPERTY . . . without an opportunity to confront those who had allegedly complained about the PROPERTY, or to view any of the evidence against them." *Id.*  The City refused to discuss amendments to the Compliance Agreement and to listen to information about the Abends' efforts to address the activity at the property.  *See id.*

On June 1, 2006, the Abends filed an appeal of the City's May 18, 2006, determination that the activity on their property constituted a nuisance.  *See id.* ¶ 18; *see also* Defs.' RJN, Ex. A (appeal, dated 6/1/06).

Under the City's policies and procedures for administrative appeals, as soon as practicable after receiving a written appeal, the case manager will forward the appeal to the administrative hearing officer (AHO) for a determination of whether the appellant has, *inter alia*, briefly identified how the City erred or abused its discretion. *See* Pet., Ex. B (Administrative Appeals, Hearing Procedures II.B.11.A). "The AHO will have up to 30 days from the date the appeal is received by the City to recommend a hearing or deny the request." *Id.* If the AHO finds that the appellant has sufficient grounds for an appeal, then an appeal hearing is scheduled. *See id.* The hearing examiner "shall be appointed from a panel of persons qualified to conduct administrative hearings by virtue of [his or her] education, experience, or profession, including City staff not associated with applicable enforcement actions." *Id.* (Administrative Appeals, Hearing Procedures II.C.2). A hearing examiner "shall be disqualified . . . for bias, conflict of interest, or prejudice or any other reason for which a judge may be disqualified in a court of law." *Id.* (Administrative Appeals, Hearing Procedures II.C.3). At the hearing, the parties "have the opportunity to present evidence by oral or written testimony of witnesses and by submission of original or true copies of documents, records, photographs, or other written material." *Id.* (Administrative Appeals, Hearing Procedures III.E.1).

On June 29, 2006, the City informed the Abends by letter that the appeal was denied without a hearing. *See id.* ¶ 22 & Ex. C (letter, dated 6/29/06). The letter was authored by Barbara Killey, an employee in the City Administrator's Office. *See id.*, Ex. C. According to the letter, the Abends' appeal was denied for failure to state adequate grounds or facts showing that the City erred or abused its discretion in bringing the action. *See id.* A subsequent letter from Ms. Killey clarified that the denial of the appeal was final as of August 3, 2006. *See id.* ¶ 24 & Ex. D (letter, dated 8/3/06).

On July 6, 2006, the City wrote to the Abends, stating that they owed the City a total of $54,739 in civil penalties from May 18 through July 6, 2006. *See id.* ¶ 23.

On September 11, 2006, the City wrote to the Abends, stating that they owed the City $120,739 in civil penalties from May 18 through September 11, 2006. *See id.* ¶ 25.

Based on the above, the Abends asserted the following claims in their complaint (separate from their petition for a writ of mandamus): (1) violation of federal due process because the City's

United States District Court

For the Northern District of California

1   administrative appeal procedures do not require a hearing; (2) violation of federal due process

2   because the administrative appeal examiner, Ms. Killey, was not impartial; (3) violation of federal

3   due process because, in initiating the nuisance enforcement action, the City Defendants acted in an

4   arbitrary and capricious manner, without any factual findings or rational basis; and (4) violation of

5   federal equal protection because the City Defendants selectively enforced City and local ordinances

6   against the Abends that were not enforced against similarly situated persons and property owners.

7   B.      Mr. Abend's Cross-Complaint

8           Mr. Abend's cross-complaint contains many of the same allegations as detailed above in the

9   Abends' separate petition/complaint.  In the cross-complaint, the following causes of action are

10  asserted: (1) violation of federal and state equal protection by selectively enforcing state nuisance

11  abatement laws against Mr. Abend that were not enforced against similarly situated persons and

12  property owners; (2) violation of both the federal and state constitutions by taking property without

13  just compensation; and (3) a violation of federal and state due process by filing the complaint and

14  amended complaint without any factual findings or rational basis.

15                          **II.    DISCUSSION**

16  A.      Subject Matter Jurisdiction

17          Although not an issue raised by either party, the Court, as a preliminary matter, must

18  examine whether it has subject matter jurisdiction over the two consolidated cases.

19          If the cases were never consolidated, then the Court would not have jurisdiction over the

20  City's lawsuit because no federal question was presented on the face of the City's complaint or

21  amended complaint.  *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) (noting that, under

22  the well-pleaded complaint rule, "federal jurisdiction exists only when a federal question is

23  presented on the face of the plaintiff's properly pleaded complaint").  However, in the instant case,

24  the two cases were consolidated, and there is case law that, "under certain circumstances, where two

25  actions are consolidated into a single action, state-ordered consolidation may affect jurisdiction and

26  removal."  *In re MTBE Prods. Liability Litig.*, 399 F. Supp. 2d 340, 353 (S.D.N.Y. 2005).  For

27  example, where a state consolidation order destroys the identity of each suit and merges them into

28

United States District Court

For the Northern District of California

1    one, then the consolidated case may potentially be removed if the consolidated case contains a claim

2    over which removal is proper.  *See id.* at 353-54.

3          In California, there are "two types of consolidation: a consolidation for purposes of trial

4    only, where the two actions remain otherwise separate; and a complete consolidation or

5    consolidation for all purposes, where the two actions are merged into a single proceeding under one

6    case number and result in only one verdict or set of findings and one judgment."  *Hamilton v.*

7    *Asbestos Corp.*, 22 Cal. 4th 1127, 1147 (2000).  In the instant case, the state court's consolidation

8    order did not explicitly specify which type of consolidation was being established.  However,

9    implicitly, the order established a complete consolidation.  Although the state court did not specify

10   that only one judgment would be rendered, it consolidated the two cases for all purposes (the

11   Abends asked in essence for consolidation for all purposes by asking that discovery, pretrial

12   motions, and trial be consolidated), and the cases proceeded under only one case number.  *See id.* at

13   1148 (concluding that two cases were completely consolidated in large part because "the court's

14   order granting the motion was not limited to a consolidation for trial: rather the court declared that

15   'It Is Ordered that Action[s] Nos. 955576 and 975884 are consolidated as Action No. 955576'" and

16   because a subsequent order from the court stated that there was consolidation for all purposes).

17         Because there was a complete consolidation, the two consolidated cases were properly

18   subject to removal, in spite of the lack of a federal question on the face of the City's complaint and

19   amended complaint, because the Abends' independent complaint asserts federal claims against the

20   City.  The Abends have not made any claim that there were procedural defects with the removal by

21   the City justifying remand.  *See Kelton Arms Condo. Owners Ass'n, Inc. v. Homestead Ins. Co.*, 346

22   F.3d 1190, 1193 (9th Cir. 2003) ("hold[ing] that the district court cannot remand sua sponte for

23   defects in removal procedure").  The Court therefore has subject matter jurisdiction over this

24   litigation and proceeds to address the merits of the motions to dismiss.

25   B.    City Defendants' Motion to Dismiss Abends' Petition/Complaint

26         As noted above, the Abends assert four causes of action in their complaint (separate from

27   their petition for a writ of mandamus).  The City Defendants argue that each of the four claims

28   should be dismissed.

6

United States District Court

For the Northern District of California

1        1.      First Cause of Action -- Procedural Due Process

In the first cause of action, the Abends assert that their right to procedural due process was violated by the City Defendants.  "A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections."  *Hufford v. McEnaney*, 249 F.3d 1142, 1150 (9th Cir. 2001) (internal quotation marks omitted).  According to the City Defendants, the Abends' claim for violation of procedural due process should be dismissed for two reasons: (1) because the Abends lack a cognizable property interest and (2) because the Abends were, as a matter of law, given adequate notice and opportunity to be heard with respect to the City Defendants' actions.

a.      Property Interest

Although a violation of procedural due process must involve a deprivation of a constitutionally protected property interest (or liberty interest), property for purposes of the Due Process Clause can be different from property for purposes of the Takings Clause.  In fact, "[t]he Due Process Clause . . . recognizes a wider range of interests as property than does the Takings Clause."  *Pro-Eco v. Board of Comm'rs*, 57 F.3d 505, 513 (7th Cir. 1995); *see also Federal Lands Legal Consortium v. United States*, 195 F.3d 1190, 1197 (10th Cir. 1999) ("[T]he fact that a grazing permit is not 'property' under the Takings Clause does not prevent the same permit (or its terms and conditions) from constituting 'property' under the Fifth Amendment Due Process Clause."); *Puerto Rico Tel. Co. v. Telecommunications Regulatory Bd.*, 189 F.3d 1, 18 (1st Cir. 1999) ("An expectation that is not property for purposes of the Takings Clause may yet sometimes entitle the citizen to procedural protection, and substantive protection against arbitrariness, before the expectation is cut off by government action.") (internal quotation marks omitted); *Corn v. City of Lauderdale Lakes*, 95 F.3d 1066, 1075 (11th Cir.1996) ("'Property' as used in the Just Compensation Clause is defined much more narrowly than in the due process clauses.").

For purposes of due process, "[p]roperty interests are not created by the Constitution but by existing rules or understandings that stem from an independent source such as state law -- rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  *Thornton v. City of St. Helens*, 425 F.3d 1158, 1164 (9th Cir. 2005) (internal quotation marks

United States District Court
For the Northern District of California

1  omitted).  "Although the underlying substantive interest is created by 'an independent source such as

2  state law,' federal constitutional law determines whether that interest rises to the level of a

3  'legitimate claim of entitlement' protected by the Due Process Clause." *Memphis Light, Gas &*

4  *Water Div. v. Craft*, 436 U.S. 1, 9 (1978).  "[T]he identification of property interests under

5  constitutional law turns on the substance of the interest recognized, not the name given that interest

6  by the state." *Newman v. Sathyavaglswaran*, 287 F.3d 786, 797 (9th Cir. 2002).

7        The Ninth Circuit has "recognized a constitutionally protected property interest in a

8  landowner's right to devote [his or her] land to any legitimate use."  *Squaw Valley Dev. Co. v.*

9  *Goldberg*, 375 F.3d 936, 949 (9th Cir. 2004) (considering the due process claim asserted by the

10  plaintiff because it had alleged that "the alleged overzealous and selective regulation of Squaw

11  Valley [by the defendants] interfere[d] with its use of its real property"); *see also Harris v. County*

12  *of Riverside*, 904 F.2d 497, 503 (9th Cir. 1990) (noting that county's rezoning deprived plaintiff of

13  the commercial use of his land until he paid a substantial nonrefundable fee to apply to have his

14  previous zoning designation reinstated; concluding that this "[l]oss of the use and enjoyment of his

15  land deprived [plaintiff] of . . . a property interest."); *DeBlasio v. Zoning Bd. of Adjustment*, 53 F.3d

16  592, 601 (3d Cir. 1995) (stating that, "in the context of land use regulation, that is, in situations

17  where the governmental decision in question impinges upon a landowner's use and enjoyment of

18  property, a land-owning plaintiff states a substantive due process claim where he or she alleges that

19  the decision limiting the intended land use was arbitrarily or irrationally reached."), *overruled on*

20  *other grounds by UA Theatre Circuit v. Twp. of Warrington*, 316 F.3d 392, 400 (3d Cir. 2003);

21  *Mohilef v. Janovici*, 51 Cal. App. 4th 267, 285 (1996) (noting that city had, via a public nuisance

22  abatement proceeding, barred plaintiffs from keeping ostriches and emus on their ranch; concluding

23  that, "[i]n light of the [plaintiffs'] ownership interest in the ranch and the fact that [one plaintiff]

24  partially owns the [birds] through his commercial ventures, the City's nuisance abatement

25  proceeding sufficiently implicates a protected property interest").

26        Courts have also recognized a constitutionally protected property interest in avoiding fines

27  and liens.  *See, e.g.*, *Connecticut v. Doehr*, 501 U.S. 1, 12 (1991) (stating that "even the temporary

28  or partial impairments to property rights that attachments, liens, and similar encumbrances entail are

United States District Court

For the Northern District of California

1   sufficient to merit due process protection"; adding that "the property interests that attachment affects

2   are significant" because "attachment ordinarily clouds title; impairs the ability to sell or otherwise

3   alienate the property; taints any credit rating; reduces the chance of obtaining a home equity loan or

4   additional mortgage; and can even place an existing mortgage in technical default where there is an

5   insecurity clause"); *Cook v. City of Buena Park*, 126 Cal. App. 4th 1, 6 (2005) (stating that a

6   landlord "undoubtedly" had a property interest in avoiding the lien provision and fines imposed by

7   an ordinance).

8        Finally, a slander on title can also effect a deprivation of a constitutionally protected property

9   interest.  *See Beck Dev. Co. v. Southern Pac. Transp. Co.*, 44 Cal. App. 4th 1160, 1189 (1996)

10  (noting that land was "disparaged" by the recommendation of the Department of Toxic Substances

11  Control that there be a moratorium on proposed development of the property; adding that "the

12  landowner's ability to sell or make use of the land would be inhibited" as a result and the landowner

13  "has a sufficient, legally recognized and protected interest in its property and business to warrant

14  similar due process protection [*i.e.*, similar to a person's interest in good name, reputation, honor, or

15  integrity]"); *cf. WMX Techs., Inc. v. Miller*, 197 F.3d 367, 375-76 (9th Cir. 1999) (stating that

16  "damage to the reputation of a business, without more, does not rise to the level of a constitutionally

17  protected property interest"; distinguishing an earlier case where there was clearly "much more than

18  an injury to the reputation of a business" -- *i.e.*, there was "actual, direct interference with business

19  goodwill"); *see also Paul v. Davis*, 424 U.S. 693, 701 (1976) (rejecting "the proposition that

20  reputation alone, apart from some more tangible interests such as employment, is either 'liberty' or

21  'property' by itself sufficient to invoke the procedural protection of the Due Process Clause").[1]

22       Guided by the above, the Court concludes that the Abends have sufficiently alleged a

23  constitutionally protected property interest which suffered a deprivation when the City issued the

24  "30 Day Notice to Abate Letter" on May 18, 2006.  Under the terms of the letter, the Abends were

25  assessed a $3,000 nuisance case fee, which could be recovered through the property tax general

26  levy, and additional substantial fines were threatened.  *See* Pet., Ex. A (letter, dated 5/18/06).

27  _____

28       [1] It is possible to distinguish *Beck Dev. Co.* and *Paul* on the grounds that they did not involve slander of title to land.

**United States District Court**

For the Northern District of California

1    Furthermore, the Abends' property was declared a public nuisance, and, drawing all inferences in

2    the Abends' favor, this declaration could impair the ability of the Abends to sell, finance, or lease

3    the property.

4         The denial of the Abends' administrative appeal also effected a deprivation of a

5    constitutionally protected property interest.  After denial of the appeal, the Abends were informed

6    that they owed the City penalties of more than $100,000.  *See id.* ¶ 25.  Per the "30 Day Notice to

7    Abate Letter," these penalties, if not reimbursed immediately, would become a special

8    assessment/priority lien recorded against the property title.  *See id.*, Ex. A (letter, dated 5/18/06).

9    Furthermore, under the terms of the letter, the Abends could be subject to additional penalties unless

10   they abated the alleged nuisance and, if they failed to do so and the City did the abatement, the

11   Abends could be billed for the costs.  *See id.*

12        Furthermore, the deprivation of property is underscored by the fact that the denial of the

13   Abends' administrative appeal effected a significant change in the relative legal positions of the

14   parties and the legal rights possessed by the Abends as owners of the property.  If, as the City

15   Defendants contend, no fundamental vested right is at stake, then the scope of judicial review via

16   administrative mandamus under California Code of Civil Procedure § 1094.5 is narrow.  The Court's

17   "inquiry will be limited to a determination of whether or not the findings are supported by

18   substantial evidence in the light of the whole record."  *Strumsky v. San Diego County Employees*

19   *Retirement Ass'n*, 11 Cal. 3d 28, 32 (1974).  In addition, on judicial review, evidence is generally

20   limited to that in the administrative record, *i.e.*, the Abends would not be able to introduce new

21   evidence in the mandamus proceedings.  *See Pomona Valley Hosp. Med. Ctr. v. Superior Court*, 55

22   Cal. App. 4th 93, 101 (1997) (noting that augmentation of an administrative record is permitted

23   "only within the strict limits set forth in section 1094.5, subdivision (e)").  In short, losing the

24   administrative appeal may well have had an adverse material effect on the Abends' legal ability to

25   protect their property interest.

26              b.    Notice and Opportunity to Be Heard

27        In *Mathews v. Eldridge*, 424 U.S. 319 (1976), the Supreme Court stated that "[t]he essence of

28   due process is the requirement that 'a person in jeopardy of serious loss [be given] notice of the case

**United States District Court**

For the Northern District of California

1   against him and opportunity to meet it.'" *Id.* at 348.  To determine what procedural protections are

2   required in a particular case, a court considers several factors:

> First, the private interest that will be affected by the official action;
> second, the risk of an erroneous deprivation of such interest through
> the procedures used, and the probable value, if any, of additional or
> substitute procedural safeguards; and finally, the Government's
> interest, including the function involved and the fiscal and
> administrative burdens that the additional or substitute procedural
> requirement would entail.

7   *Id.* at 335; *cf. People v. Ramirez*, 25 Cal. 3d 260, 269 (1979) (considering the same factors above as

8   well as one additional factor, namely, "the dignitary interest in informing individuals of the nature,

9   grounds and consequences of the action and in enabling them to present their side of the story before

10  a responsible governmental official").

11          The Supreme Court has indicated that these three factors are applied in light of the specific

12  facts of each case -- and not, *e.g.*, to categories of administrative proceedings.  *See Gilbert v. Homar*,

13  520 U.S. 924, 930 (1997) ("It is by now well established that due process, unlike some legal rules, is

14  not a technical conception with a fixed content unrelated to time, place and circumstances.")

15  (internal quotation marks omitted); *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) ("Due process, as

16  this Court often has said, is a flexible concept that varies with the particular situation."); *Joint*

17  *Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 162 (1953) (Frankfurter, J., concurring)

18  (explaining that due process is a general requirement that legal processes follow the forms of law, be

19  appropriate to the case, and be just to the parties involved); *see also McGuinness v. Dubois*, 75 F.3d

20  794, 800 (1st Cir. 1996) (recognizing that "some particular case in the future may present

21  compelling evidence that MCI-CJ's [across-the-board] policy of denying live testimony from inmate

22  witnesses at a disciplinary hearing held in the West Wing violates due process," but "leav[ing]

23  consideration of such a case where it appears presently to reside -- in the future"; "on the facts of

24  this case," there was no due process violation); *Mohilef*, 51 Cal. App. 4th at 302, 304-05 (noting

25  that, "[i]n this case, the denial of prehearing discovery did not result in an unfair hearing, nor did it

26  prejudice the [plaintiffs'] case"; also noting that, while "[d]ue process may require an agency to

27  subpoena witnesses where, absent their testimony, the agency's ultimate decision would be based

28

United States District Court
For the Northern District of California

1  solely on their written reports," in this case, the plaintiffs did not provide the court with any

2  information about who they wished to subpoena or what those witnesses might have said).

3      Although the City Defendants argue that, based on the allegations in the complaint, adequate

4  process was given to the Abends, the cases cited by the City Defendants do not demonstrate that, as

5  a matter of law, the Abends were given adequate process. *Friends of the Old Trees v. Department of*

6  *Forestry & Fire Protection*, 52 Cal. App. 4th 1383 (1997), for example, does not even address the

7  issue of procedural due process. *See id.* at 1391 (noting that "courts and commentators have found

8  that purely documentary proceedings can satisfy the *hearing requirement of Code of Civil Procedure*

9  *section 1094.5*, so long as the agency is required by law to accept and consider evidence from

10 interested parties before making its decision") (emphasis added).  Nor does *Del Mar Terrance*

11 *Conservancy, Inc. v. City Council*, 10 Cal. App. 4th 712, 729 (1992) (simply discussing

12 admissibility of evidence not contained in the administrative record).

13     Moreover, it is telling that the City Defendants have made no attempt to explain why process

14 was adequate as a matter of law based on the three *Eldridge* factors above.  The three factors require

15 factual analysis and is not susceptible to a 12(b)(6) motion. *See Pavelich v. Natural Gas Pipeline*

16 *Co. of Am.*, No. 02 C 3374, 2002 U.S. Dist. LEXIS 23946, at *15 (N.D. Ill. Dec. 12, 2002)

17 ("Whether post-deprivation remedies are adequate is principally a question of fact, not appropriate

18 for determination on a motion to dismiss."); *see also Sonnleitner v. York*, 304 F.3d 704, 713 (7th Cir.

19 2002) ("[M]inimum procedural due process requirements ultimately turn on a highly fact-specific

20 inquiry.").  For example, the second factor requires an assessment of the risk of erroneous

21 deprivation and the probable value of additional procedural safeguards.  In their administrative

22 appeal, the Abends argued, *inter alia*, that the majority of nuisance activity occurred on public

23 property and not their own property.  In view of this fact-based issue, whether additional procedural

24 safeguards such as a live hearing, discovery, subpoenaing of witnesses, cross-examination of

25 witnesses, etc., would materially advance the reliability of the City's determination cannot be

26 assessed in the abstract or in a vacuum. *See, e.g.*, *Robledo v. City of Chicago*, 444 F. Supp. 2d 895,

27 902 n.2 (N.D. Ill. 2006) ("[T]his matter is not appropriately decided on a motion to dismiss.  For

28 example, defendants argue that an additional hearing on these issues would be unnecessary because

12

United States District Court

For the Northern District of California

1    these issues 'can be brought to City's attention without requiring a hearing.'  The record before the

2    court does not however, explain what informal procedures currently exist, why these procedures

3    would be adequate to avoid erroneous deprivations, or that these procedures were made available to

4    plaintiffs in this case.  Furthermore, it would be inappropriate to decide plaintiffs' claims on facts

5    that go well beyond the allegations of the complaint.").  Likewise, the third factor -- *i.e.*, the burdens

6    imposed by the additional procedural safeguards -- requires factual analysis.

7           Accordingly, the City Defendants' motion to dismiss the procedural due process claim is

8    denied.

9                    2.    Second Cause of Action -- Due Process

10          In the second cause of action, the Abends assert that their due process rights were violated

11    because Ms. Killey, the administrative appeal examiner, was not impartial.[2]  The City Defendants

12    contend that this due process claim should be dismissed because (1) the Abends do not allege a

13    cognizable property interest and (2) the Abends do not adequately allege hearing officer bias.  For

14    the reasons stated above, the Abends have alleged a cognizable property interest, and therefore the

15    Court turns to the issue of whether they have adequately alleged bias on the part of Ms. Killey.

16          The Court concludes that the claim of bias is not adequately supported, particularly under the

17    pleading standard recently articulated by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 127

18    S. Ct. 1955 (2007).  In *Bell Atlantic*, the Supreme Court held that an allegation of parallel conduct

19    by major telecommunications providers was insufficient to establish a claim for relief for conspiracy

20    under § 1 of the Sherman Act because parallel conduct was consistent not just with conspiracy, but

21    also with "a wide swath of rational and competitive business strategy unilaterally prompted by

22    common perceptions of the market."  *Id.* at 1964.  In so holding, the Supreme Court emphasized that

23    the allegation of the complaint must state more than a possible claim; it must state a plausible one.

24    *See id.* at 1965-66 (noting that "[f]actual allegations must be enough to raise a right to relief above

25    the speculative level" and that there must be "plausible grounds" for a claim for relief).

26

27    _____

28          [2] The Abends do not specify whether the due process violation is a procedural violation or a
      substantive one.

13

United States District Court
For the Northern District of California

1    According to the Abends, Ms. Killey was not impartial for two reasons: (1) because she was

2    reviewing the work of an employee in the same office (*i.e.*, the Office of the City Administrator) and

3    (2) because she used to work as an attorney in the Neighborhood Law Corps ("NLC"), a division in

4    the City Attorney's Office which is predisposed against property owners, and Mr. Sanchez as well as

5    Laura Blair (of the City Attorney's Office) were also previously or currently affiliated with the

6    NLC.  Both of these allegations are insufficient to support a claim of bias.

7    First, the fact that the Office of the City Administrator was in effect both the investigator and

8    the adjudicator is not enough to establish bias.  As the City Defendants point out, in *Withrow v.*

9    *Larkin*, 421 U.S. 35 (1975), the Supreme Court rejected "[t]he contention that the combination of

10   investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in

11   administrative adjudication."  *Id.* at 47; *see also id.* at 54-55 (same).  If, in the instant case, Ms.

12   Killey specifically was both the investigator and the adjudicator, then the Abends would have a

13   stronger case, *see id.* at 52 (noting that, under the APA, "no employee engaged in investigating or

14   prosecuting may also participate or advise in the adjudicating function" but that there is an

15   "express[] exempt[ioin] from this prohibition for 'the agency or a member or members of the body

16   comprising the agency'"), but there is no dispute that the investigator and adjudicator were different

17   persons, though employed by the same City agency.

18   Second, the fact that Ms. Killey was formerly affiliated with the NLC is not enough to

19   establish bias.  Even if the Abends are right that the NLC is predisposed against property owners,

20   that bias cannot be automatically imputed to Ms. Killey simply because she was once employed

21   there.  As the City Defendants note, judges are often former prosecutors but are not as a result

22   automatically barred from adjudicating criminal matters.  *See Soden v. Murphy*, No. 4:05 CV 1399

23   CAS DDN, 2007 U.S. Dist. LEXIS 32731, at *6 (E.D. Mo. Apr. 13, 2007) (citing cases in which

24   "federal courts have held that, when a former prosecutor later acts as a judge, an appearance of bias

25   or prejudice against the defendant or grounds to require disqualification of the judge do not

26   automatically appear").  The Abends try to distinguish their case on the basis that the NLC targets

27   landlords specifically whereas prosecutors act only "generally against crime," Opp'n at 13, but this

28   distinction is not persuasive.  For instance, the fact that a former prosecutor specialized in drug cases

United States District Court

For the Northern District of California

1    would not disqualify her from later serving as a judge in trials involving drug charges.  The bottom

2    line is that, while a due process violation may be established without a showing of actual bias, there

3    must be "special facts and circumstances present in the case before [the court demonstrating] that the

4    risk of unfairness is intolerably high."  *Withrow*, 421 U.S. at 58.  The Abends, alleging nothing other

5    than general circumstances from which they speculate bias, have not demonstrated that the situation

6    as alleged presents a risk of unfairness that is intolerably high.

7         The Court therefore dismisses without prejudice the Abends' due process claim based on the

8    alleged bias of Ms. Killey.  To state a viable due process claim they will have to allege facts that are

9    more specific and more suggestive of actual bias.

10        3.    Third Cause of Action -- Substantive Due Process

11        In the third cause of action, the Abends claim that their right to substantive due process was

12   violated as a result of the City Defendants' actions.  The City Defendants contend that this cause of

13   action is preempted by the Takings Clause.  *See, e.g.*, *Armendariz v. Penman*, 75 F.3d 1311, 1324

14   (9th Cir. 1996) ("Because the conduct that the plaintiffs allege is the type of government action that

15   the Fourth and Fifth Amendments regulate, *Graham* [*v. Connor*, 490 U.S. 386 (1989)] precludes

16   their substantive due process claim.").  In turn, the Abends argue that the cause of action is not

17   preempted based on *Lingle v. Chevron*, 544 U.S. 528 (2005).

18        The Court agrees with the Abends that the substantive due process claim is not preempted.

19   *Chevron* makes clear that a substantive due process claim and a takings claim address two different

20   matters.  Substantive due process concerns the *legitimacy* of the government's actions; takings, on

21   the other hand, concerns the *severity* of the burden that government imposes upon property rights.

22   *See id.* at 539, 542 (noting that the "common touchstone" in the regulatory takings jurisprudence is

23   the focus on the severity of the burden that government imposes upon private property rights and

24   that the issue of whether government action substantially advances a legitimate public purpose

25   "reveals nothing about the *magnitude or character of the burden* a particular regulation imposes

26   upon private property rights" or "provide any information about how any regulatory burden is

27   *distributed* among property owners") (emphasis in original); *see also Consolidated Waste Sys., LLC

28   v. Metro Gov't of Nashville*, No. M2002-02582-COA-R3-CV, 2005 Tenn. App. LEXIS 382, at *81

(June 30, 2005) ("As a general theory, the primary purpose of a takings claim is to enforce the constitutional protection against government deprivation of private property without just compensation.  It is not an attack on the validity of the governmental action itself.").

In the instant case, the Abends have alleged facts challenging the legitimacy of the City Defendants' actions and therefore have sufficiently stated a claim for a substantive due process violation.  *See id.* at *80-81 (June 30, 2005) (stating that a court should look at a plaintiff's "actual claims to determine if the substantive due process claims are in reality only recast takings claims" -- "[i]f not, they are separately reviewed according to applicable principles"); *see also John Corp. v. City of Houston*, 214 F.3d 573, 583 (5th Cir. 2000) (stating that a careful analysis must be undertaken in each case to assess the extent to which a plaintiff's substantive due process claim rests on protections that are also afforded by Takings Clause).  They have alleged that the City Defendants' nuisance enforcement action lacks a factual or rational basis and is just a pretext to avoid the payment of just compensation for the taking of their property.  *See* Pet. ¶ 60.  The fact that the Abends refer to a taking does complicate matters somewhat; it raises the question of whether the Abends are trying to recast a takings claim as a substantive due process claim.  However, *Chevron* suggests that there will often be a predicate substantive due process claim before a takings claim.

> Instead of addressing a challenged regulation's effect on private property, the "substantially advances" inquiry probes the regulation's underlying validity.  But such an inquiry is logically prior to and distinct from the question whether a regulation effects a taking, for the Takings Clause presupposes that the government has acted in pursuit of a valid public purpose.  The Clause expressly requires compensation where government takes private property "for public use."  It does not bar government from interfering with property rights, but rather requires compensation " in the event of *otherwise proper interference* amounting to a taking."  Conversely, if a government action is found to be impermissible -- for instance because it fails to meet the "public use" requirement or is so arbitrary as to violate due process -- that is the end of the inquiry. No amount of compensation can authorize such action.

*Chevron*, 544 U.S. at 543 (emphasis in original).

United States District Court

For the Northern District of California

1

4.        Fourth Cause of Action -- Equal Protection

2        In the fourth cause of action, the Abends allege that the City Defendants violated the Equal

3    Protection Clause because they selectively enforced City and local ordinances against the Abends

4    that were not enforced against similarly situated persons and property owners.  The City Defendants

5    argue that the equal protection claim should be dismissed because "selective enforcement of valid

6    laws, without more, does not make [their] actions irrational."  Mot. at 15.

7        Plaintiffs have alleged disparate treatment.  While the City Defendants are correct that

8    selective enforcement of a valid law by itself is not enough to give rise to an equal protection claim,

9    the Ninth Circuit has explained that

10            [a] plaintiff can establish a "class of one" equal protection claim by
             demonstrating that it "has been intentionally treated differently from
11            others similarly situated and that there is no rational basis for the
             difference in treatment."  Where an equal protection claim is based on
12            "selective enforcement of valid laws," a plaintiff can show that the
             defendants' rational basis for selectively enforcing the law is a pretext
13            for "an impermissible motive."

14    *Squaw Valley*, 375 F.3d at 944.  "[A] plaintiff may show pretext by [demonstrating] that either: (1)

15    the proffered rational basis was objectively false; or (2) the defendant actually acted based on an

16    improper motive."  *Id.* at 946.

17        Here, the Abends have alleged that there was no factual (and hence no rational) basis for the

18    City's declaration that the Abends' property was a nuisance.  Moreover, they have alleged an

19    improper motive on the part of the City Defendants -- namely, to avoid just compensation for the

20    taking of the Abends' property.  They have also alleged facts supporting an inference of improper

21    motive -- *e.g.*, the "30 Day Notice to Abate Letter" was issued only one day after the City wrote a

22    letter to the Abends complaining of alleged drug- and prostitution-related arrests at or directly in

23    front of the property, and subsequently the City refused to discuss amendments to the Compliance

24    Agreement and to listen to information about the Abends' efforts to address the activity at the

25    property.  *See* Pet. ¶¶ 13-14, 16.  In effect, the Abends imply the City had no real interest in

26    obtaining the Abends' cooperation.  Whether this claim is credible is not at issue at this stage.

27        Accordingly, the Court denies the motion to dismiss the equal protection claim.

28

United States District Court

For the Northern District of California

5.     Preclusion

With respect to all four causes of action alleged in the complaint, *i.e.*, both due process and equal protection claims, the City Defendants argue in favor of dismissal on the basis that the claims could have been raised at the administrative level but were not and that the Abends should be therefore precluded from raising them now.  In support of this argument, the City Defendants cite *Reid v. Engen*, 765 F.2d 1457 (9th Cir. 1985).  In *Reid*, the plaintiff was appealing from a decision of the National Transportation Safety Board ("NTSB") affirming the suspension of her pilot certificate for 120 days.  *See id.* at 1460.  On appeal, the plaintiff raised several issues challenging the FAA Administrator's authority on statutory and constitutional grounds, none of which had been raised in the NTSB proceeding.  *See id.*

As the Abends argue, *Reid* does not govern their case.  In *Reid*, the Ninth Circuit was presented with the issue of whether the plaintiff failed to exhaust her administrative remedies in appealing a decision of a federal agency.  *See id.* at 1460.  However, the Abends have brought a claim under § 1983 against the City.  In *Patsy v. Board of Regents*, 457 U.S. 496, (1982), the Supreme Court held that "exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983."  *Id.* at 2568.  The City Defendants did not make any argument in their reply brief negating the applicability of *Patsy*.

6.     Injunctive Relief

The City Defendants apparently seek dismissal of the Abends' claim for injunctive relief on the theory that the Abends have failed to allege irreparable injury.  While the scope of the injunction sought is not clear and may be subject to future motions, it appears that the Abends assert, *inter alia*, that the nuisance abatement laws have been selectively and vindictively enforced against them.  *See* Pet. (Fourth Cause of Action); Cross-Compl. (First Cause of Action).  If proven, the Abends may be entitled to an injunction against any further such discriminatory prosecution.  *Cf. Murgia v. Municipal Court*, 15 Cal. 3d 286, 290 (1975).  Standing might be established if unlawful motive were demonstrated, particularly in view of the prior abatement proceedings brought by the City which the Abends contend was also meritless.  At this stage, since all the allegations must be taken

18

1  as true and reasonable inferences drawn in the Abends' favor, dismissal of their claim for injunctive

2  relief is not appropriate.

3         7.    <u>Individual Liability</u>

4       Based on the complaint, it is not entirely clear whether the Abends are suing the individual

5  defendants in their official capacities only, in their individual capacities only, or in both capacities.

6  The City Defendants argue, in effect, that they need clarity as to how the individual defendants are

7  being sued.  In their opposition, the Abends do not clarify the matter.  The Abends should specify

8  how the individual defendants are being sued.  The parties should meet and confer to determine the

9  most convenient way to address this problem (*e.g.*, the Abends could file an amended complaint or

10 the City Defendants could serve an interrogatory on the Abends, with the Abends providing a

11 response on an expedited basis).

12        8.    <u>Municipal Liability</u>

13      In *Monell v. Department of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court held that a

14 municipality can be held liable under § 1983 for a constitutional violation by its employees or

15 officials but only if it can be said that the violation results from the municipality's official policies or

16 customs.  *See id.* at 694 ("[I]t is when execution of a government's policy or custom, whether made

17 by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy,

18 inflicts the injury that the government as an entity is responsible under § 1983.").  According to the

19 City Defendants, the Abends have not made sufficient allegations regarding municipal liability in

20 accordance with *Monell*.

21      The City Defendants' argument is not persuasive.  First, as the Abends point out, "[t]he

22 *Monell* Court set forth an 'official policy or custom' requirement to limit § 1983 *damage* awards

23 against municipalities."  *Chaloux v. Killeen*, 886 F.2d 247, 250 (9th Cir. 1989) (emphasis in

24 original).  In the instant case, the Abends have alleged only claims for prospective relief.  The City

25 Defendants did not contest this point in their reply brief.

26      Second, regardless of *Chaloux*, the Abends have alleged enough for municipal liability

27 pursuant to *Monell* to survive a motion to dismiss.  The Abends have alleged that the City

28 Defendants' actions were in accordance with a custom, policy, or practice of the City.  *See, e.g.*, Pet.

United States District Court
For the Northern District of California

¶¶ 42, 52, 62, 74.  While the City Defendants contend that the Abends have failed to identify the exact official policy, this argument is not persuasive at this juncture.  First, there is no heightened pleading requirement of specificity regarding *Monell* allegations.  Second, a single constitutional deprivation can be an official policy.  *See Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999).  An isolated constitutional violation is an official policy for which a municipality can be held liable when: (1) the person causing the violation has "final policymaking authority," *see id.* at 1235-36; (2) the person causing the violation is a subordinate but his or her action is "ratified" by one with final policymaking authority, *see id.* at 1238; or (3) the person causing the violation is a subordinate but one with final policymaking authority is "deliberately indifferent" to the subordinate's action.  *See id.* at 1240.  That the Abends have not identified who the final policymaker of the City is or which City employee actually caused the constitutional violation is not a bar at this stage.  That is something that discovery will inform.  *See, e.g.*, *Kase v. Wiseman*, No. 93-3076, 1993 U.S. Dist. LEXIS 14414, at *8 n.4 (E.D. Pa. Oct. 14, 1993) (rejecting argument that "§ 1983 claim against the City should be dismissed because plaintiffs failed to identify an official with final policymaking authority who violated Sandra Kase's constitutional rights"; noting that a heightened pleading standard does not apply in civil rights cases alleging municipal liability under § 1983).  *But see Pivonka v. Collins*, No. 3:02-CV-0742-G, 2002 U.S. Dist. LEXIS 12211, at *9 (N.D. Tex. July 5, 2002) (agreeing with the city's argument "that the plaintiffs' claims must fail because they have not alleged any specific policymaker responsible for promulgating the policy or custom which led to the alleged constitutional violations").  Here, the allegations of the complaint imply that the administrative actions taken have been approved or ratified by a final policymaker as the City has not only formally acted on the administrative appeal but also sought to enforce its actions by bringing an abatement/nuisance lawsuit.

C.      City's Motion to Dismiss Mr. Abend's Cross-Complaint

        In the cross-complaint, Mr. Abend asserts claims for equal protection, a taking, and substantive due process.  For the reasons stated above, the Court denies the City's motion to dismiss with respect to the equal protection and substantive due process claims.  The only remaining issue is whether Mr. Abend has properly stated a claim for a taking.

**United States District Court**
For the Northern District of California

1    The Court grants the motion to dismiss the takings claim because the claim is premature.

2    Whether there has been a taking cannot be determined until the abatement/nuisance lawsuit filed by

3    the City is resolved.  As noted above, the crux of any takings claim is that the deprivation of

4    property be sufficiently severe so as to rise to the level of a takings.  Here, the burden on Mr.

5    Abend's property cannot be assessed until the Court is able to determine what abatement, if any, is

6    required or what use, if any, is enjoined.  In this case, the "30 Day Notice to Abate" generally

7    requires the Abends to abate the nuisance but does not specify the specific scope of the nuisance or

8    the particular steps they must take.  The "30 Day Notice to Abate" thus did not represent a "final,

9    definitive position regarding how it will apply the regulations at issue to the particular land in

10   question." *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson*, 473 U.S.

11   172, 191-95 (1985).  Even if the City could be deemed to have taken a definitive position, it relies

12   on its lawsuit to enforce the notice, and thus the severity of the burden on Abends' property cannot

13   yet be measured.  *Cf. City of Seattle v. McCoy*, 4 P.3d 159, 166-72, 101 Wash. App. 815, 827-39

14   (Wash Ct. App. 2000) (holding that court order of closure constitutes the taking); *see also*

15   *Christopher Lake Dev. Co. v. St. Louis County*, 35 F.3d 1269, 1274 (8th Cir. 1994) (noting that

16   "[t]he ripeness doctrine requires not only that the [City] arrive at a final, definitive position, but also

17   that its decision inflicts an actual, concrete injury").  The current inability to define the severity of

18   the burden precludes the finding of a "takings" whether the claim is for a public or private taking.

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

**United States District Court**
For the Northern District of California

### III.   <u>CONCLUSION</u>

For the foregoing reasons, the City Defendants' motion to dismiss the Abends' complaint is granted in part and denied in part. The Court dismisses without prejudice only the due process claim based on the alleged bias of Ms. Killey. The remainder of the motion is denied.

Likewise, the Court grants in part and denies in part the City's motion to dismiss Mr. Abend's cross-complaint. The Court dismisses without prejudice the takings claim. The remainder of the motion is denied.

This order disposes of Docket Nos. 4 and 7.


IT IS SO ORDERED.


Dated: July 12, 2007

_____
EDWARD M. CHEN
United States Magistrate Judge